# CRENSHAW v. McCORMICK.

WILLS; INTENT; AFTER-ACQUIRED REAL ESTATE.

1. The mere fact that a devise of real estate is contained in the residuary clause of a will, will not show an intention on the part of the testatrix that after-acquired real estate should pass under that clause.

2. The intention required by the act of Congress of January 18, 1887 (24 Stat. 361, changed by Sec. 1628 of the code), providing that " any will hereafter executed, devising real estate in the District of Columbia, from which it shall appear that it was the intention of the testator to devise property acquired after the execution of the will shall be deemed, taken and held to operate as a valid devise of all such property,"— must be clear and manifest and rest on something more certain than conjecture; *following* Bradford v. Matthews, 9 App. D. C. 441; McAleer v. Schneider, 2 id. 467.

3. A codicil, signed but not witnessed, and made subsequent to the acquisition by the testatrix of real estate, cannot be resorted to to ascertain whether it was the intention of the testatrix, by the use of the language employed in the residuary clause of her will, to pass after-acquired real estate.

No. 1171.   Submitted March 7, 1902.   Decided April 1, 1902.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia construing a will, in a suit for that purpose.          *Affirmed.*

The COURT in its opinion stated the case as follows:

The bill in this case was filed by the appellants, R. Parker Crenshaw, Augustus P. Crenshaw, Susie Crenshaw, Elizabeth O. Thompson, John F. Reed, Nannie P. Reed, Miles K. Crenshaw, Mary F. Crenshaw, M. Millson Crenshaw and Elizabeth J. Crenshaw, to obtain a judicial construction of the last will and testament of Mrs. Mary S. Millson, de-

ceased. It is shown by the allegations of the bill that Mrs. Millson died on the 2d day of March, 1897, seized of certain real estate, and leaving a duly executed last will and testament, and also an unattested codicil insufficient to operate upon and pass real estate, but sufficient to pass personal estate. The duly executed will was made and published on the 19th day of September, 1889, and the codicil was made and published on the 17th day of July, 1895. It is alleged in the bill and also conceded by stipulation of counsel, that the property in controversy, described in the bill, was purchased and acquired by Mrs. Millson, the testatrix, after the execution of her will and before the execution of the codicil thereto. There is no claim or contention that the real estate did or could pass by the codicil.

By the will, after bequeathing certain specific legacies to certain of her relations, and certain pecuniary bequests made, the testatrix disposed of the rest and residue of her estate, by the following clause of her will: "All the rest of my estate, and the residue of it, of every description whatever, real, personal and mixed, I give, devise and bequeath to my sister, Mrs. Elizabeth Ricarda Crenshaw, to have and to hold the same absolutely and in fee simple, and hereby constitute and appoint my said sister executrix of this my last will and testament, and request and direct that she shall be allowed to qualify without giving security."

By the unattested codicil, after making certain changes in the bequests in her will, the testatrix concludes the instrument in these terms:

"All the rest and residue of my property and estate, of every description whatever, not otherwise bequeathed, having been already devised and bequeathed to my said sister, Mrs. A. P. Crenshaw, I need not say more on the subject."

Mrs. Elizabeth Ricarda Crenshaw, the executrix and residuary devisee and legatee of her sister, died about the 11th day of September, 1899, leaving a last will and testament duly executed, whereby she devised all her estate of every description, to her children, and they are the complainants in this proceeding. The bill is filed against the other

heirs-at-law of the testatrix, Mrs. Millson, Richard P. McCormick, Margaret P. Stoddert, Millson McCormick, David McCormick, Foxhall P. McCormick, Libbie McCormick, and Charlotte C. McCormick.

*Mr. E. Hilton Jackson* for the appellants:

1. The question is whether it was the intention of the testatrix to dispose of all the real estate of which she might die seized. The cardinal rule for the construction of wills, to which all others must yield, has been declared in *Smith* v. *Bell,* 6 Pet. 68, 75, to be that the " intention of the testator expressed in his will shall prevail provided it be consistent with rules of law. \* \* \* It is emphatically the *will* of the person who makes it and is defined to be the ' legal declaration of a man's intentions which he wills to be performed after his death.' These intentions are to be collected from his words and ought to be carried into effect if they be consistent with law."

The act of Congress of January 18, 1887, provides as follows: "Any will hereafter executed, devising real estate in the District of Columbia, from which it shall appear that it was the intention of the testator to devise property acquired after the execution of the will, shall be deemed, taken and held to operate as a valid devise of all such property."

No presumption of a testator's intent to die intestate as to any part of his property is allowable when the words of the will may fairly convey the whole estate. This rule is founded upon the presumption that every man who sits down deliberately to make his will does not intend to leave any portion of his property in such a condition as not to pass by the will. The idea of any one deliberately purposing to die testate as to a portion of his estate and intestate as to another portion of it is so unusual in the history of testamentary disposition as to justify almost any construction to escape it. 2 Redfield on Wills, 235; *Vernon* v. *Vernon,* 53 N. Y. 351; Underhill on Wills, Vol. I, p. 79; *Cushing* v. *Aylwin,* 12 Metc. 169; *Pruden* v. *Pruden,* 14 Ohio St. 251; *Given* v. *Hilton,* 95 U. S. 594.

The construction of the residuary clause does not depend upon particular property which the testator might have in his contemplation, but upon what the words he has used will embrace according to their ordinary import. *Bland* v. *Lamb,* 5 Maddock, 250.

In Iowa the language of the statute is " property to be subsequently acquired may be devised when the intention is clear and explicit." In the case of *Briggs* v. *Briggs,* 69 Iowa, 619, the following language appeared in the will: " Remainder of my personal estate and whole of my real estate." The court held that a bequest in this form of the residue of the estate was sufficient to carry the residue of all the person owned at the time of death and that the above statute was enacted for the purpose of extending the operation of the rule making it applicable to real as well as personal property. This principle was followed in *Cushing* v. *Aylwin,* 12 Metc. 169.

It may, therefore, be laid down as a general proposition that where the testator makes a general devise of real estate, especially by *residuary clause,* he will be considered as meaning to dispose of such property to the full extent of his capacity; and that such a devise will carry not only the property held by him at the execution of the will, but also real estate subsequently acquired, of which he may be seized and possessed at the date of his death, provided there is testamentary power to make such disposition. 1 Redfield on Wills, 385, 387; Underhill on Wills, Vol. I, p. 75 *et seq.; Hardenbergh* v. *Ray,* 151 U. S. 113; *Wait* v. *Belding,* 24 Pick. 129, 136, 137; *Burnside's Succession,* 35 La. 708; *Briggs* v. *Briggs,* 69 Iowa, 617; *Paine* v. *Forsaith,* 84 Me. 71; *Miss. Soc.* v. *Mead,* 131 Ill. 338.

It is clear that words which merely import but do not emphatically refer to time present, as a general devise or bequest of property of a particular genus, will generally include all property of that genus or description to which testator is entitled at the time of death, though acquired after the making of the will. 1 Jarman on Wills (5th ed.), 326.

2. If there were any doubt as to whether the language of

the will of Mary S. Millson of September 19, 1889, is sufficient to convey the after-acquired realty, that doubt is effectually removed by reference to language in the unattested codicil of July 17, 1895, which codicil was executed after the acquisition of the realty aforesaid. In other words, it is competent for a testator to become his own lexicographer. It is not claimed that this unattested codicil would be sufficient to convey the after-acquired realty, but simply that the language just quoted should under the rules of construction be read in connection with the will for the purpose of making it clear in what sense testator employed certain language in the will. A codicil is in its nature a part of the will and an explanation of the intention of the testator. *Butler* v. *Butler,* 2 Mack, 96; *Leavens* v. *Butler,* 8 Porter, 380.

Where a testator in one part of his will has recited that he had given a legacy to a certain person, but it has not appeared that any such legacy was given, the court has taken the recital as conclusive evidence of an intention to give by the will, and fastening upon it, has given the erroneous recital the effect of an actual gift. *Weeds* v. *Bristow,* Law Rep., 2 Eq. Cas. 333; *Atwood* v. *Geiger,* 69 Ga. 502.

When in the context of a will the testator has explained his own meaning in the use of certain words, the court shall take that as their guide, without resorting to lexicographers to determine what these words ought to signify in the abstract or to adjudicate cases to discover what they may have been decided to mean under different circumstances. *Carnagy and Wife* v. *Woodstock et al.,* 2 Munford, 234; *Darley* v. *Martin,* 13 C. B. 683, 690.

The act of Congress of January 18, 1887, was considered by this court in the case of *McAleer* v. *Schneider,* 2 App. D. C. 461, in which the court was called upon to say whether such an expression as " all my belongings " was sufficient to convey after-acquired realty. The court held, however, that " belongings " referred only to personal property, and consequently found it unnecessary to say whether the expression was sufficient to convey after-acquired real estate. The other case in which this court was called upon

to interpret the effect of the foregoing act upon after-acquired realty was that of *Bradford* v. *Matthews,* 9 App. D. C. 438.

It is submitted that that case is no precedent for the one before the court, inasmuch as the appellants rely primarily upon the residuary character of the clause in the will, and it cannot be contended that the will, construed by the court in *Bradford* v. *Matthews,* contained even the *suspicion* of a residuary clause; on the contrary, the language construed by the court was found in the *very first clause* following the preliminary statements usually found in wills.

*Mr. Holmes Conrad* for the appellees.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

As we have stated, there is no contention or pretense on the part of the complainants that the real estate in controversy passed or was affected by the codicil made to the will of Mrs. Millson. The single question, therefore, is, whether the real estate in controversy, having been acquired by the testatrix after the making of her will, passed by the residuary clause thereof, upon the proper construction of that clause, in accordance with the terms of the act of Congress of January 18, 1887 (24 Stat. 361, Ch. 25, Sec. 2). By that act it is provided, that—

"Any will hereafter executed, devising real estate in the District of Columbia, *from which it shall appear that it was the intention of the testator* to devise property acquired after the execution of the will, shall be deemed, taken, and held to operate as a valid devise of all such property." This act simply conferred power upon the testator to dispose of all the real estate of which he might die seized, provided he made his will sufficiently expressive of an intention to do so.

What is most relied upon by the appellants to support their contention, that it was the intention of the testatrix in this case that all the real estate that she might acquire after the execution of the will, or of which she might be

seized at the time of her death, should pass by the will, is the fact that the devise under which the appellants claim is contained in the residuary clause of the will. But if that contention were good and sufficient, all residuary clauses would have the effect of passing all after-acquired real estate. The terms of the residuary clause in this will are not materially different from those employed in a majority of wills containing residuary clauses. The testatrix does not say in this clause of her will, that she devised thereby all the rest and residue of her estate of which she might die seized and possessed. In seeking the intention of the testatrix from the terms she has employed in the residuary clause of her will, the question is, what is meant by the terms, " I give, devise and bequeath all the *rest and residue* of my estate, real and personal? " These are terms most generally employed in residuary clauses of wills. As to the personal estate, by the principles of the common law, those terms pass all the otherwise undisposed of personal estate of which the testator may be possessed at the time of his death; but as to the real estate, by the well settled principles of the common law, those terms, if not aided and explained from other parts of the will, simply mean and are presumed to be intended to refer to the *rest and residue* of the real estate owned by the testator at the time of the execution of the will. Indeed, according to the common law of England, and under the statute of wills of Hen. 8, and down to the wills act of 1 Vict. Ch. 26, a will was regarded by the law as being in the nature of a conveyance, and therefore no person could dispose of any real estate by will, in which he had not, at the time of the execution of the will, a legal or equitable estate. Under this rule, after-acquired real estate could not pass by the will. When this rule was changed by statute, it was made necessary that the intention of the testator should clearly appear from the words or context of the will.

The rule is clearly stated by Mr. Justice Washington, speaking for the Supreme Court of the United States, in the case of *Smith* v. *Edrington,* 8 Cranch, 66, where the devise

was, " I bequeath the whole of my property," and the statute of Virginia conferred power upon any person to devise by will any real estate which he might have at the time of his death. In that case the learned justice said: " The rule in England as well as in Virginia at the time this law was passed, was, that a will, as to land, speaks at the date of it, and as to personal estate, at the time of the testator's death. The law created no new or different rule of construction, but merely gave a power to the testator to devise lands which he might possess, or be entitled to, at the time of his death, if it should be his pleasure to do so. The presumption is that the testator means to confine his bequests to land to which he is then entitled, and this presumption can only be overruled by words clearly showing a contrary intention." See also *Allen* v. *Allen,* 18 How. 385, 392.

The intention required by the act of Congress to be apparent from the terms or general context of the will, must be clear and manifest, and rest on something more certain than conjecture. The court must proceed on known principles and established rules, not on loose conjectural interpretation, nor considering what a person may be imagined to do in the testator's circumstances. *Allen* v. *Allen, supra; Bradford* v. *Matthews,* 9 App. D. C. 438, 447; *McAleer* v. *Schneider,* 2 App. D. C. 461.

The frame of the act of Congress of 1887, requiring the intention of the testator to affirmatively appear from the terms of the will, in order to justify the court in holding that after-acquired lands pass under the will, has been changed by the recent code adopted for this District (Sec. 1628), and the rule enacted by the act of 1887 has been reversed, and made, in substance, to conform to the statutory rule adopted in several of the States, where the English statute of wills (1 Vict. Ch. 26, passed in 1837), in respect to after-acquired real estate, has been followed. By the statute 1 Vict. Ch. 26, it is declared that every will shall be construed, with reference to the real estate of the testator, to speak and take effect as if executed immediately before the death of the testator, *unless a contrary intention shall appear by the will.* By the

section of the new code referred to, which went into effect on 1st of January, 1902, the rule is declared in these terms: "Any will hereafter executed which shall, *by words of general import,* devise all the estate or all the real estate of the testator, shall be deemed, taken, and held to operate as a valid devise of any real estate acquired by said testator after the execution of such will, *unless it shall appear therefrom that it was not the intention of the testator* to devise such after-acquired property."

Thus the rule has been reversed from the affirmative requirement of evidence from the terms of the will of the intention of the testator to dispose of after-acquired real estate, to the rule of construction whereby the will is made to operate and take effect upon all real estate of the testator owned by him at the time of his death, unless it shall appear from the will that it was *not the intention* of the testator to devise such after-acquired property.

This change in legislative form of enactment, as to the manifestation of intention of the testator, marks the distinction taken in many of the recent cases decided by the State courts, and upon which the decisions were made to turn; and most of the cases relied upon by the appellants are cases ruled upon this distinction. There are cases, however, founded upon a broader construction of the general power of devise of all the real estate of the testator, and which produce a conflict among the many decisions upon this subject.

It has been suggested, though not very seriously argued, on the part of the appellants, that, though conceded that the clause in the unattested codicil is without effect to pass real estate, yet the terms employed therein might be resorted to as means of ascertaining the intention of the testatrix in the use of the terms employed by her in the residuary clause of her will. There has been no authority cited for the support of this proposition, and we doubt whether any can be found.

There is no uncertainty or doubt as to the meaning of the terms employed in the residuary clause of the will. They

are plain words, admitting of no doubtful meaning. And in such case, the well-settled general principle is, as deduced from all the authorities, that a testator is always presumed to use the words in which he expresses himself according to their strict and primary acceptation, *unless, from the context of the will,* it appears that he has used them in a different sense, in which case the sense in which he thus appears to have used them, will be the sense in which they are to be construed. This would seem to result from the plain requirement of the statute. The statute requires that the will shall be in writing, attested by witnesses, and it would seem not to admit of a question, that such an instrument being *per se* without effect, cannot by means wholly independent of the attested writing, be made effectual as a will. The will must be complete in itself, and not be dependent upon extrinsic evidence to show what is really intended to be·devised by it. This would seem to be too plain to require the citation of authorities for its support.

The complainants not insisting upon the alleged right to partition under the allegations of the present bill, the decree of the court below must be affirmed; and it is so ordered.

*Decree affirmed.*