119  731
133  222
119  731
136  170

C. A. FLYNN, Appellant, v. SARAH L. HOLMAN, Appellee.

**Wills:**  IMPERFECT DESCRIPTION OF LAND:  EXTRINSIC EVIDENCE.
1   Where a will fails to name the county and state in which the
real estate devised is situated, and to name the township and
range, but it appears that testatrix was the owner of parts of
sections corresponding to those described in the will, extrinsic
evidence is admissible to complete the description and point
out the very property the will was intended to operate upon.

**Construction of Will.**  A will after disposing of certain personal
2   property then proceeded as follows; "Further I hereby give
& Bequeath to My Daughter S. the sum of one dollar, The
total amount of hir Shair to Be Paid hir within 3 years After
my Decease By C, and further More All the following Lands
to wit the SE, SW in section 18 range 22, 40 acres & one-
fourth of the NE NW in section 19, 10 acres when sold to Be
Equally divided Between C & A. after All debts is Paid xxx.
Further I hereby give and Bequeath to my son C All of my
Money Notes Mortgages Live Stock & Farm Implements to A."
*Held*, that the devise of the two tracts of land was to the two
sons, and of the notes and mortgages to C, and of the farm
machinery to A.

**After Acquired Property:**  HOW PASSES.  Where a will contains no
3   general devise of real estate, the only mention of that class of
property being a specific reference to particular tracts owned
by the testatrix at the date of the will, and there being no
residuary clause or devise into which, in the absence of a
specific grant the same might fall, land acquired by the testa-
trix after the date of the will passes as intestate property.

*Appeal from Lucas District Court.*—HON. M. A. ROBERTS,.
Judge.

THURSDAY, APRIL 9, 1903.

THE opinion states the case.—*Modified* and *affirmed.*

*Temple, Hardinger & Temple* for appellant.

*Stuart & Stuart* for appellee.

WEAVER, J.—Charity E. Flynn died April 26, 1894,
owning three tracts of real estate described as follows:
The southeast quarter of the southwest quarter of section

18, in township 72 north, of range 22 west; also the north one-fourth of the northeast quarter of the northwest quarter of section 19, in the same township and range; also the south fifty-eight feet of the north one hundred and eighteen feet of lot 6 in the northwest quarter of section 13, in township 72 north, of range 23 west. The deceased was a divorced woman, and left as her sole surviving heirs and next of kin two sons, Cyrus J. Flynn and Charles A. Flynn, and one daughter, Sarah L. Holman. She left a will, of which the following (except the marginal figures, added for convenience of reference) is a verbatim copy:

### LAST WILL & TESTAMENT

Realizing the Fraility of Human Nature & the Uncertainty of Life I Charity E Flynn of Lucas County Iowa of Lawful Age & Sound Mind Make & Publish this as my Last Will & testament As follows viz I hereby give & Bequeath to my Son Cyrus J Flynn one Bed & Beding & whotsoever House hold good he may see fit to keep As his Own, & keep All I ow him in Money & Notes & to My son Charles A Flynn one Bed & Bedding & whotsoever house hold goods he may wish To keep & the Balance sole & Be Equally devided Between Cyrus J & Charles A Flynn Further I hereby give & Bequeath to My Daughter Sarah L Holman the sum of one dollar The total Amount of hir Shair to Be Paid to hir within 3 years After my Decease By Cyrus J Flynn & further More All the following Lands to wit The S E, S W in section 18 range 22 40 acrs & one fourth of the N E N W in Section 19 10 acrs When sold to Be Equaly devided Between Cyrus J & Charles A Flynn after All debts is Paid & furthermore all the Personal Property of whot Soever kind I may own At my deth shal Belong to Cyrus J Flynn As his own & hold in his own name for Ever 1 further Desire that my son Cyrus J Flynn Pay all Just Debts or claims Against me At my Decease As soon as Practicable & All my funeral Expences to Be Paid By Cyrus J Flynn

(32) I hereby Make & Appoint
(33) Cyrus J Flynn Administrator of this
(34) My Last will & testament without
(35) Bond or Security to Be given By him
(36) Further I hereby give & Bequeath to my Son
(37) Cyrus J Flynn All of my Money Notes
(38) Mortgages Live stock & farm Implements
(39) to Charles A Flynn          Charity E Flynn

This will was duly admitted to probate, and Cyrus J. Flynn qualified and acted as executor. On May 3, 1898, the executor filed his final report, showing, among other things, that he had paid Sarah L. Holman $1, and had in his said representative capacity conveyed the several tracts. of land aforesaid to himself and to his brother, Charles. A., in equal shares, as being, in effect, a distribution of said property in accordance with the intent of the testatrix expressed in her will. These conveyances appear to. have been presented to and approved by the court, but were never recorded, and have since been lost. The final report was approved by the court, and the executor discharged. Thereafter, on August 27, 1900, this action was. begun by Cyrus J. Flynn and Charles A. Flynn, alleging the facts above set forth, and asking to have their title to. said land confirmed and quieted. The answer of Mrs. Holman denies the title of the plaintiffs, and alleges, in substance, that the will, properly construed, gives to her. the forty-acre tract in section 18, and that, if such construction cannot be upheld, then the will, so far as relates. to said tract, is void for uncertainty. She further claims. that the lot or tract of land in section 22 is not described by the will, and that, as one of the heirs of her mother,. she is owner of a one-third interest therein. Before the case came on for trial, Cyrus J. Flynn died testate, making. his brother, Charles, A., his sole legatee and devisee. The district court found the will of Charity E. Flynn void for uncertainty as to all the lands, and that title thereto. passed from the testatrix by descent, and not by will, to.

her three children in equal shares.    Upon this basis
Charles A. Flynn, as one of the  three heirs of his mother,
and as devisee under the will of his brother, Cyrus J.
Flynn, was adjudged to be the owner of an undivided
two-thirds of said lands, and Sarah L. Holman to be the
owner of an undivided one-third.    From the decree thus
entered Charles A. Flynn, surviving plaintiff, appeals.

As the finding of the district court is stated in general
terms, and does not indicate whether the uncertainty found
in the will is in respect to the description of the property
devised or as to the identity of the devisee, we will examine
the instrument with reference to both  these features.

I.    The land mentioned in the  will is there described
as "the S E, S W in section 18 range 22 forty acres & one
fourth of the N E N W in Section 19 ten acres."   The

1. IMPERFECT
description
of land: ex-
trinsic evi-
dence.
description of the fractional parts of a section
by abbreviations or initial letters is a  matter
of common and general usage and cannot be
said to create any uncertainty as to the testatrix's mean-
ing.    *Harrington v. Fish*,  10 Mich. 415;  *McCready v.
Lansdale*,  58 Miss. 877;  *Jenkins v. McTigue* (C. C. A.)
22 Fed. Rep. 148.    It will be observed that the will fails
to name the county or state in which the land lies, and in
one instance omits the number of the township, and in
the other the township and range   These omissions do
create an apparent uncertainty as to the subject of the
devise, for it is a matter of common knowledge that in
our system of land surveys there are many townships and
ranges containing sections numbered 18 and 19, any one of
which may answer the description given in the will.    The
inquiry then presents itself whether the will may be aided
by proof of extrinsic facts and circumstances tending to
point out and designate the particular tract or tracts of
land which the testatrix intended to devise.    The question
is one not free from difficulty, but we think the weight of
authority and the tendency of our own decisions require

an affirmative answer. To ascertain the intent of the testator is the one object to which all testamentary construction is directed. The general proposition is that such intent must be derived solely from the language of the instrument. But in reading that language and defining its meaning the court will put itself as far as possible in the position of the testator, and take into consideration the circumstances surrounding at the time the instrument was executed. *Perry v. Hunter,* 2 R. I. 80; *Blackmore v. Blackmore,* 3 Sneed, 365; *Adamson v. Ayres,* 5 N. J. Eq. 353; *Lassitur v. Wood,* 63 N. C. 360; *Hutchison's Appeal,* 47 Pa. 84.

Under this will it was shown or conceded on the trial that at the date of the will in controversy Mrs. Flynn was a divorced women; that the two sons and daughter above named were her only children; that she was then the owner of the southeast quarter of the southwest quarter of section 18 and the north one-fourth of the northeast quarter of the northwest quarter of section 19, in township 72, range 22, in Lucas county, Iowa; that the third, or smaller, tract or lot hereinbefore described was purchased by her at a later date; and that she neither had nor owned any other real estate. Reading the will in the light of these established facts, can there be any serious doubt as to what tracts of land were intended by the testatrix when she made use of the description "S E, S W in section 18 range 22 forty acres" and "one fourth of the N E N W in section 19 ten acres?" If instead of this description she had said, "The fifty-acre farm on which I reside," no one would dispute the sufficiency of these words to carry the title or the right of the devisee to supply the section township and range by parol evidence. *Hopkins v. Grimes,* 14 Iowa, 73; Wigram on Construction of Wills, 8; *Doolittle v. Blakesley,* 4 Day, 265 (4 Am. Dec. 218). Yet is not the description actually employed by her as capable of being made definite and certain as in the case supposed? Presumably the woman was of sound

mind, and there is nothing to indicate that in the solemn act of making a will for the distribution of her estate after her death she indulged in the idle effort to devise property which she did not own, and left wholly undevised the property she did own. She was then the owner of just two pieces of real estate. She devised two pieces and no more. The description of each is absolutely accurate so far as it goes, and in applying it to these lands not a clause or word of the language of the will must be rejected, but all are given full force and effect.

It is said in behalf of appellee that the will in this respect presents a patent ambiguity, and therefore parol evidence to identify the property is inadmissible. While the authorities are at variance upon the question thus raised, and there are cases which seem to sustain the appellee's position, we think that, according to the better doctrine, there is no patent ambiguity in this description, or, if such ambiguity exists, it forms one of the exceptions to the rule which excludes parol testimony. This question was presented to the Illinois court upon a description substantially as follows: "One and one half acres in the Northwest corner of section five in McDonough county, state of Illinois." It is there said: "If there had been but one section five in McDonough county, the description would have been perfectly certain. The ambiguity arises from the fact there are several sections bearing that number. The ambiguity, then, is latent, arising not upon the face of the deed, but arises only when it is ascertained de hors the deed what are the boundaries of McDonough county, and that they are such as to include several sections five." *Bybee v. Hageman*, 66 Ill. 519; *Clark v. Powers*, 45 Ill. 283; *Dougherty v. Purdy*, 18 Ill. 206; *Halladay v. Hess*, 147 Ill. 588 (35 N. E. Rep. 380). Our own holding in *Chambers v. Watson*, 60 Iowa, 339, is also in point. In that case the will described neither the township, nor range, nor the part of section in which the

testator's land was located, yet we held it was not such an
ambiguity as to make the devise void, and that extrinsic
evidence could properly be introduced to point out the
land.    We treated it as a case of imperfect description,
rather than an ambiguity in the technical sense, and
applied to it the general rule by which, while parol testi-
mony as to the testator's intent is generally inadmissible,
yet resort may be had to it in order to apply the devise to
the subject-matter, and point out the very property which
the will was intended to operate upon.    In *Eckford v.
Eckford*, 91 Iowa, 54, the will described the "southeast"
quarter of a certain section    The testatrix did not own
the southeast quarter, but did own the southwest quarter
of that section, and we held that, under the circumstances
shown to exist, the southwest quarter was the land in-
tended to be devised, and the will was construed accord-
ingly.    *Stewart v. Stewart*, 96 Iowa, 620; *Patch v. White*,
117 U. S. 210 (6 Sup. Ct. Rep. 617, 29 L. Ed. 860); *Whit-
comb v. Rodman*, 156 Ill. 116 (40 N. E. Rep. 553, 28 L. R. A.
149, 47 Am. St. Rep. 181); *Hawkins v. Garland's Adm'r.*,
76 Va. 149 (44 Am. Rep. 158).    An instructive case, very
like the one at bar, has been decided by the Penn-
sylvania court, and the principle here recognized was there
approved.    *Gaston's Estate*, 188 Pa. St. 374 (41 Atl. Rep.
529, 68 Am. St. Rep. 874).    The purpose for which
extrinsic evidence may be legally admitted is not to add
to or vary the meaning of a will nor. to prove an unex-
pressed intention of the testator, but to enable the court,
by the light of the circumstances surrounding the exe-
cution of the instrument, to determine just what was
meant by the words actually employed by him.    *McCorn
v. McCorn*, 100 N. Y. 510 (3 N. E. Rep. 480); *Fish v.
Hubbard's Adm'rs*, 21 Wend. 651; *Crosby v. Mason*, 32
Conn. 482; *Smith v. Bell*, 6 Pet. 75 (8 L. Ed. 322).
Broom's Legal Maxims, 612, states the rule to be "that

extrinsic evidence is unquestionably admissible for the purpose of showing that the uncertainty which appears upon the face of the instrument does not in point of fact exist, and that the intent of the party, though uncertainly and ambiguously expressed, may yet be ascertained by proof of facts to such a degree of certainty as to allow of the intent being carried into effect." Following these authorities, and applying the principle therein approved to the will before us, we think it clearly appears that the testatrix intended to devise the forty-acre tract and the ten-acre tract owned by her, and hereinbefore particularly described, and that such intent must prevail if the will be otherwise valid and effective.

II.   The remaining question affecting the two first-mentioned tracts of land is whether there is any fatal uncertainty in the will in the matter of designating or
2. CONSTRUC-  naming the person to whom the devise is
TION of will.  made? An inspection of the instrument indicates at once that the scrivener was an unlearned person. Many of the words are misspelled, and the language is awkward, involved, and obscure, and unaided by punctuation.   It is the business of the courts, however, to deal with such instruments, and, if it be found possible within the bounds of reasonable interpretation, declare and give effect to the intention embodied therein.   To accomplish this we may, if necessary, transpose words (1 Jarman, Wills [5th Ed.] star page 499); we may supply omitted words (1 Jarman, Wills, [5th Ed.] star page 486); and we may, if need be, disregard punctuation where it exists, or insert it where it does not exist (17 Am. Eng. Law [2d Ed.] 20).   It is also a fundamental rule of the law of wills that some effect shall be given the instrument, if possible; and where two constructions may be given to the language, one of which will sustain and the other defeat the will, the one sustaining it is to be preferred. *Banning v. Banning*, 12 Ohio St. 437; *Den v. Crawford*, 8 N. J. Law,

97; 1 Jarman on Wills, 156.   The fact that the paper
was evidently drawn by an ignorant or unskilled person
must also be considered by the courts, and the language
employed by such a person given a less rigid and technical
interpretation than where the evidence of skill and tech-
nical knowledge in the writer is apparent upon the face
of the instrument.  *Delph v. Delph*, 2 Bush, 171; *Brasher v.
Marsh*, 15 Ohio St. 108; *Weeks v. Cornwell*, 104 N. Y. 325 (10
N. W. Rep. 431).   Reading the will in controversy, it be
comes at once apparent that the chief difficulty in placing
an interpretation upon it is found in endeavoring to so sepa·
rate the text into distinct sentences, clauses, or paragraphs
that each may express the idea intended to be conveyed.
This difficulty we think is by no means insurmountable.

Upon a careful study of the language, it may, without
violating any rule of construction, and without leaving
any part meaningless, be read in seven successive divisions
or clauses as follows:   (1) lines one to twelve, (2) thirteen
to seventeen; (3) eighteen to twenty-two; (4) twenty-
three to twenty-six; (5) twenty-seven to thirty-one; (6)
thirty-two to thirty-five; and (7) thirty-six to thirty-nine
—each inclusive.   Thus arranged, the effect of the several
paragraphs is, first, to give her household goods to her
sons; second, to give her daughter the sum of $1; third,
to give, the two tracts of land then owned by her, or the
proceeds of the sale thereof, to her two sons in equal
shares; fourth, to give her personal property generally to
the son Cyrus J.; fifth, to require Cyrus J. to pay all
claims against her estate; sixth, to appoint Cyrus J. exe-
cutor of the will; and, seventh, to give her notes and
mortgages to Cyrus J., and her farm machinery to Charles.
Appellee undertakes to read lines thirteen to nineteen
inclusive, as constituting one clause; making provision for
the daughter, and thereby indicating her as the devisee of
the forty-acre tract; but this is a forced and unnatural
construction.   It is clear that by the words, "& further

More All the following Lands to wit," the testatrix had
reference to both tracts, and that she was making like
disposition of both. If the appellee is right, and the forty-
acre tract is included in the devise to her, then line twenty
must also be included in that paragraph, thus giving her
the ten-acre tract also—a construction which would render
lines twenty-one and twenty-two entirely meaningless.

It is true that there is an apparent inconsistency in
the disposal made of the personal estate, which no ar-
rangement of the paragraphs will eliminate; but this
case involves the real estate only, and it is unnecessary to
pass upon the rights of the parties in any other respect.
It may, however, be remarked that, where a testator has
given his personal estate in general terms to A., and else-
where in the same will gives specific articles or items of
personalty to B., the law will not construe such provisions
as inconsistent or uncertain and void, but will uphold the
specific gift to B. as an exception from the operation of
the general gift to A. Obviously, an application of this
rule will remove most of the seeming ambiguity or uncer-
tainty in the several bequests made by Mrs. Flynn. The
interpretation we place upon her will is the only one which
appears to give effect to the instrument in all its parts,
and is, we believe, a correct exposition of the intent sought
to be expressed by the testatrix. We therefore hold that
the will is not void for uncertainty as to the devisees of
the two tracts of land therein mentioned, and that the
sons of the testatrix are the beneficiaries of such devise.

III. We now turn our attention to the third tract of
land owned by Mrs. Flynn at the time of her death, and
described as the "south 58 feet off of the north 118 feet of
3. AFTER ac- lot 6, in northwest quarter of southwest
quired prop- quarter of section 13, township 72, range 23,
erty: how
passes. in Lucas county" As already shown, this
land was purchased by the testatrix after the making of
her will, and is, of course, not mentioned therein. After-

acquired property will pass under the terms of a will whenever the intention to so provide is clear and explicit. Code, section 3271; *Briggs v. Briggs*, 69 Iowa, 617. But a reading of the will in this case seems to reveal nothing expressing or necessarily implying such an intent. There is no general devise of land or real estate, and the only mention of that class of property is made with specific reference to the particular tracts which the testatrix owned at the date of the will. Neither is there any residuary clause or devise into which, in the absence of a specific devise, such property may fall. We are therefore constrained to hold that this tract of land must be treated as intestate property, the title to which passed by descent from Mrs. Flynn to her three children in equal shares.

Opposing this conclusion the appellant says that by reason of the direction given in the will to sell the lands and divide the proceeds between the sons, we should, under familiar principles, treat the entire estate as personal property, and the bequest of $1 to appellee as measuring her entire interest therein under the will. The weakness of this proposition is seen in the fact that the direction to sell has reference only to the specific tracts mentioned in the devise, and does not, by any fair application, have reference to other lands which the testatrix might thereafter acquire. There can be little or no doubt that the testatrix intended by her will to dispose of all the property, both real and personal, she then possessed, and, for reasons not disclosed, to limit her daughter's share therein to the nominal sum of $1. This, we think, is fairly indicated by the statement that this sum shall be the total amount of her share. It may also be true that she did not intend the daughter to have any benefit from her subsequently acquired property, and believed the will was sufficient to have that effect, but we find no declaration to this effect, either in form or substance. The conclusions we have announced require that the decree of the district court be

reversed as to the two tracts of land mentioned in the will, and affirmed as to the third or remaining tract.

Decree to this effect, and quieting the title of the respective parties in harmony with the views herein expressed, may be entered in this court or in the district court, as the appellant may elect. Costs will be taxed two-thirds to the appellee and one-third to the appellant. —MODIFIED and AFFIRMED.