Fred D. KOKERNOT, Jr., Appellant,

v.

W.B. DENMAN, et al., Appellees.

No. 13–85–168–CV.

Court of Appeals of Texas,
Corpus Christi.

April 10, 1986.

Rehearing Denied May 1, 1986.

Shannon H. Ratliff, McGinnis, Lochridge & Kilgore, Austin, for appellant.

R.L. Miller, Miller, Miller, Robinson & Whalen, Gonzales, Charles L. Nunn, Nunn, Griggs & Wetsel, Sweetwater, for appellees.

Before BENAVIDES, UTTER and SEERDEN, J.J.

## OPINION

BENAVIDES, Justice.

This is an appeal from a partial summary judgment involving a will construction and decree of partition.

Appellant brings four points of error, considered together for purposes of this appeal. Appellant claims that the trial court erred in granting appellees' partial summary judgment. The trial court held that the one-half interest in properties known as "First Tract" and "Second Tract" acquired by Ruth Spooner Kokernot, deceased, after execution of her will, passed under "Item Eighth" of her will to her two grandchildren, appellees Bryan S. Denman and David Brent Denman. Appellant claims that his motion for summary judgment should have been granted and the property should have passed under "Item Ninth" of the decedent's will, to each heir or group of heirs in equal shares.

The pertinent parts of decedent's will read as follows:

### ITEM EIGHTH:

I give and devise unto my grandsons, Bryan S. Denman and David Brent Denman, my community one-half interest in a tract of 223 acres of land purchased by my husband F.D. Kokernot, Sr., from Al Brevard Brothers and Evelyn Brothers *and any and all other* real estate, and interests in real estate, *which may be owned by me* and *located in the Felix Taylor League, Abstract No. 71, and the Joseph McCoy League, Abstract No. 46,* situated in Gonzales County, Texas, *it being intended to give and devise unto my said two grandsons all of the land and interests in land located in said surveys;* to have and to hold the same unto the said Bryan S. Denman and David Brent Denman to be divided between them equally, share and share alike. [emphasis ours]

### ITEM NINTH:

All of the rest and residue of my estate, real, personal and mixed and wheresoever situated *not hereinabove disposed of,* and including but not limited to my community interest in the cash and cash assets in my said husband's name, my interests in any and all cattle which may be owned by me *at the date of my death* and my interests in the real estate inherited by me from my mother, I give, devise and bequeath to my husband F.D. Kokernot, Sr., for and during the term of his natural life, together with the income, rents and revenues therefrom with remainder thereof on his death to my son Fred D. Kokernot, Jr., my daughter Ruth Kokernot Denman and my granddaughters, Peggy Hall Sharrock and Eleanor Hall Harris, to be divided between them in the shares or proportions of any undivided one-third thereof to my son Fred D. Kokernot, Jr., and undivided one-third thereof to my daughter Ruth Kokernot Denman and one-third thereof jointly to my granddaughters Peggy Hal Sharrock and Eleanor Hall Harris. [emphasis ours]

After the trial court granted a partial summary judgment for appellees, the jury found that the real property in question, belonging to the estates of Fred D. Kokernot, Sr., deceased, and Ruth Spooner Kokernot, deceased, is susceptible to a division-in-kind between the interest owners, and the trial court rendered a decree of partition.

Under the decree of partition, appellant and appellees Bryan S. Denman and David Brent Denman are joint owners of the property in question in fee simple. In addition to other property dispositions, Bryan and David "own in equal shares in fee an undivided ½ interest in the tracts or parcels of land known as FIRST, SECOND, THIRD and FOURTH TRACTS," and appellant, Fred D. Kokernot, Jr., is the owner of an undivided ⅙th interest in those tracts of land.

The issue before us is which of two clauses, "Item Eighth" or "Item Ninth", in Mrs. Kokernot's will controls the disposition of decedent's after-acquired ½ interest in the FIRST and SECOND tracts of land. We agree with the trial court that "Item Eighth" controls this disposition.

Decedent executed her will on October 10, 1969; decedent's husband executed his will on April 9, 1975. Mr. Kokernot died in 1976 and Mrs. Kokernot died in 1980.

Initially, Mr. Kokernot owned four tracts of land as his separate property, in which Ruth Kokernot acquired a ½ interest upon Mr. Kokernot's death. These tracts of land include:

(1) the Kokernot homestead in Gonzales County;

(2) land in San Patricio County;

(3) A 1427.8 acre tract of land in Gonzales County ("First Tract;" a part of Joseph McCoy League Abstract No. 46);

(4) A 765.1 acre tract in the Joseph McCoy League ("Second Tract").

The parties do not dispute the disposition of the Kokernot "homestead" (which passed by Item Seventh of Mrs. Kokernot's will), the San Patricio County property or the remaining one-half interest in "First"

and "Second Tracts" (devised under Item Third of Mr. Kokernot's will).

■ Appellant argues that because Item Eighth of Mrs. Kokernot's will did not refer to property she might own "at the date of her death," she did not intend to devise the property to her grandsons. He also claims that although the "First Tract" and most of the "Second Tract" lie within the Joseph McCoy League, approximately 2.5 acres of the "Second Tract" fall outside the league,[1] and therefore there was no intent that it pass to the appellees.

Appellant asserts that at the time Mrs. Kokernot executed her will, her only real property in interest was her ½ community property interest in the 223 acre tract of land (part of the Felix Taylor League, Abstract No. 71), known as "Third Tract," and Mrs. Kokernot intended to pass title only to that property by way of Item Eighth.

Appellant claims that the "balance of the language in Item Eighth concerning other real estate 'which may be owned' by Mrs. Kokernot in the Felix Taylor and Joseph McCoy leagues—in which the 223–acre tract is located—was merely intended to carry any excess or inadvertently omitted acreage *then owned*." Appellant claims that there is no language in Item Eighth indicating an intention to dispose of after-acquired property or interests in property. Finally, appellant insists that awarding appellees interests in "First Tract" and "Second Tract" would leave them a disproportionate share of Mrs. Kokernot's estate, and there is no evidence that she favored her grandsons or intended to leave them a disproportionate share of her estate. We disagree with appellant's arguments.

We note that appellant did not claim ambiguity at trial but insisted on a particular interpretation in his motion for summary judgment. While we must examine the intent of the testator when she made the will, a will "must be understood to speak from the time of the testator's death and whatever estate he then possessed must be held to have passed according to its terms." *Henderson v. Ryan*, 27 Tex. 677 (1884). In *Haley v. Gatewood*, 74 Tex. 281, 12 S.W. 25 (1889), our Supreme Court ruled that after-acquired property passed under a will that provided for disposition of "all of the estate I now own and possess." The language of testatrix here, "and any and all other real estate which may be owned by me ..." sufficiently provides for the disposition of the after-acquired property.

If Mrs. Kokernot had intended to dispose only of her community one-half interest in the 223–acre tract referred to in Item Eighth, the clause could have provided for such a limited disposition. The terms "and any and all other real estate and interest in real estate which may be owned by me ..." and the term stating her intent to "give and devise ..." indicate her intent to dispose of the after-acquired property at the time she made the will. The reference to "interest" in the tracts, rather than "such interests" or "community interests," and the expansive use of the words "any and all after interests," indicate her intent to dispose of the Taylor and McCoy Leagues properties and not solely her community interests. Examining Mrs. Kokernot's will as a whole, Items Two through Eight make very specific bequests of realty and personalty. We see no reason why the disposition of Mrs. Kokernot's after-acquired interest in the Taylor and Joseph McCoy Leagues should be treated differently than her after-acquired bequests in Item Seventh merely because the testatrix did not use the term "at the time of death."

In light of the specific gift and devise and stated intention to give and devise in "Item Eighth" and its failure to conflict with or be in disharmony with the other provisions of the will, we cannot vary the terms actually used by the testatrix, nor require that she should have used other terms when the terms used by her were

---

1. The trial court divided the 2.5 acres out of the John McCoy Survey under the Decree of Partition. Appellees assert that line of the subject property cuts across a small corner of the John McCoy Survey, and the exclusion of the 2½ acres was presumably an oversight. Nonetheless, there is no dispute presented on appeal over the 2½ acres per se, nor relief requested with respect to the said 2½ acres.

succinct and unambiguous. The events and circumstances existing at the time of the execution of her will are clear and not in disharmony.

Mrs. Kokernot may well have believed at the time of making her will that she was giving a proportionate share of her estate to each of her heirs; she may have attached a greater sentimental value on the items of personalty than on the land she gave to her grandsons. We cannot know the reasons why she divided the property in the manner that she did, but it is clear to this Court that she intended to dispose of her interest in "First Tract" and "Second Tract" by bequest to the appellees in this cause.

The question is not what the testatrix intended to write, but the meaning of the words she actually used. *Rekdahl v. Long*, 417 S.W.2d 387, 389 (Tex.1967). The court may not redraft the will, vary or add provisions under the guise of construction of the language of the will in order to reflect some presumed intention of the testatrix. *Welch v. Straach*, 531 S.W.2d 319, 322 (Tex.1975).

Appellant cites *Winkler v. Pitre*, 410 S.W.2d 677 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.), for the proposition that the property here should pass under the residuary clause. In *Winkler*, however, there was no residuary clause, and there was no reference in the will to after-acquired property from the decedent's husband. The Court in *Winkler* stated that "[w]e must here determine what testatrix meant by what she actually said and not by what she would have said." *Winkler* at 680.

In *Winkler*, the wife expressed the desire that her husband, at his death, will his half of their property to the persons to whom she had given her half, which clearly indicates that she did not intend by her will to accomplish that purpose. *Winkler* at 679. Mrs. Winkler did not make a disposition as was made here, but simply stated her "wish" or "desire."

We agree with appellant that the testatrix's intent at the time the will was executed controls; however, we also agree that a will speaks at the time of the testatrix's death. *See Shriner's Hospital for Crippled Children of Texas v. Stahl*, 610 S.W.2d 147, 150 (Tex.1980). Where there is no specific bequest of after-acquired property within the four corners of a will, the property should pass under a residuary clause; however, in this case there was a specific bequest in Item Eighth of the will.

In our case, the testatrix *specifically* devised to grandsons Bryan S. Denman and David Brent Denman "interests in real estate, *which may be owned by me* and located in the Felix Taylor League, Abstract No. 71, and the Joseph McCoy League, Abstract No. 46, situated in Gonzales County, Texas, *it being intended to give and devise unto my said grandsons all of the land and interests in land located in said surveys.*" [emphasis ours]

Appellant argues that the absence of the words "at the date of my death," in Item Eighth makes the disposition of property "which may be owned by me" refer only to that property she owned at the date of execution of the will. We disagree. The testatrix did not merely state her "desire" that the property pass in a certain manner, but specifically stated "I give and devise unto my grandsons, Bryan S. Denman and David Brent Denman . . . ." The words "at the date of my death" were unnecessary. *See Briggs v. Peebles*, 144 Tex. 47, 188 S.W.2d 147, 150 (1945); *Bullington v. Estate of Belcher*, 665 S.W.2d 517, 518 (Tex. App.—Austin 1983, writ ref'd n.r.e.).

We agree that in case of conflicts or ambiguities, there is a presumption that the testator intended to treat all of his children or grandchildren alike. *McGrede v. McGrede*, 200 S.W.2d 638, 640 (Tex.Civ. App.—Texarkana 1947, no writ). However, in *McGrede*, the testator did not make specific bequests to individual grandchildren, but designated the beneficiaries of all his property to be "my beloved grandchildren who survive me." *McGrede* at 640.

Here, there are no ambiguities. There are no general bequests to "all of the children" or "grandchildren." There is no dispute as to what words were written in the will. There is a specific bequest to

two specific grandchildren named in Item Eighth. When a will is plain in its terms and unambiguous in its meaning as to the lawful intentions of the testator, it is a legal question for the court to interpret the will and carry out the testator's wishes. *Wilkins v. Garza*, 693 S.W.2d 553 (Tex. App.—San Antonio 1985, no writ); *Marlin v. Kelly*, 678 S.W.2d 582, 587 (Tex.App.— Houston [14th Dist.] 1984, no writ). A provision, clause or word will be ignored only where it is clearly illegal or clearly contrary to the general intention of the testator. *Peden Iron & Steel Co. v. Lockett*, 131 Tex. 287, 115 S.W.2d 405 (1938).

We cannot ignore the language of Item Eighth of Mrs. Kokernot's will. It devised and set out her intent to devise the disputed properties to the appellees. We overrule all of appellant's points of error. The judgment of the trial court is AFFIRMED.